1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FREE ODELL SMITH,

11              Petitioner,                No. 2: 07-cv-1462 GEB KJN P

12        vs.

13   DERRAL ADAMS, et al.,

14              Respondents.         FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding without counsel with a petition for writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2004 conviction for

19   second degree murder.  The jury further found that petitioner personally discharged a firearm

20   causing great bodily injury.  Petitioner is serving a sentence of 40 years to life.

21              This action is proceeding on the amended petition filed March 9, 2010.  (Dkt. 43.)

22   After carefully reviewing the record, the undersigned recommends that the petition be denied.

23   II.  Anti-Terrorism and Effective Death Penalty Act ("AEDPA")

24              In Williams (Terry) v. Taylor, 529 U.S. 362 (2000), the Supreme Court defined

25   the operative review standard in a habeas corpus action brought pursuant to 28 U.S.C. § 2254.

26   Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the

1

court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law.  Id. at 405.  "Contrary to" clearly established law applies to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law; or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

 "Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue.  Id. at 407-08.  It is this prong of the AEDPA standard of review which directs deference be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 410-11 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19 (2002).

 "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court.  Wright v. Van Patten, 552 U.S. 120 (2008).  Thus, extrapolations of settled law to unique situations will not qualify as clearly established.  See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

 The state courts need not have cited to federal authority, or even have indicated

1   awareness of federal authority, in arriving at their decision.  Early v. Packer, 537 U.S. 3 (2002).

2   Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an

3   unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is

4   one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v.

5   Andrade, 538 U.S. 63, 75-76 (2003).  Moreover, the established Supreme Court authority

6   reviewed must be a pronouncement on constitutional principles, or other controlling federal law,

7   as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v.

8   Packer, 537 U.S. at 9.

9          However, where the state courts have not addressed the constitutional issue in

10  dispute in any reasoned opinion, the federal court will independently review the record in

11  adjudication of that issue.  "Independent review of the record is not de novo review of the

12  constitutional issue, but rather, the only method by which we can determine whether a silent state

13  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

14  2003).

15         When reviewing a state court's summary denial of a claim, the court "looks

16  through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234

17  F.3d 1072, 1079 n.2 (9th Cir. 2000).

18  III.  Background

19         The opinion of the California Court of Appeal contains a factual summary.  After

20  independently reviewing the record, the undersigned finds this summary to be accurate and

21  adopts it herein:

22         On the morning of February 21, 2004, Scott Appleby, defendant's business partner
           in a mobile auto repair business, was sleeping in one of defendant's cars parked on
23         Odea Drive in Sacramento. Around 5:30 a.m., Appleby was awoken by the sound
           of someone starting and stealing defendant's Chevrolet Caprice Classic, which
24         was parked directly behind the car in which Appleby was sleeping. Appleby saw
           three cars in the vicinity at the time of the theft, including a 1969 white Mercury
25         Cougar. Appleby informed defendant of the theft and gave him descriptions of the
           cars.
26

3

The following afternoon, Appleby was on Odea Drive, working on a car owned by "T-Max," when defendant arrived driving an El Camino. While defendant was still in the vicinity talking to T-Max, Appleby saw the same white Mercury Cougar he had seen during the car theft drive by and go around the corner. Appleby told another friend named Nick Costello and Costello went to tell defendant. Appleby then saw defendant, T-Max, and Costello jog to the corner and back.

Defendant then went to his El Camino, retrieved an SKS assault rifle from the trunk, walked out into the street and approached the driver's side window of the Cougar, which was now driving back down Odea Drive. Defendant then, without saying a word, fired four or five rounds into the Cougar, from only two feet away. Defendant and T-Max left in defendant's El Camino.

Christopher Navarro, the driver of the Cougar, was killed. Michelle Toney, the passenger in the Cougar, was not seriously injured. Toney was scared, had focused on the gun, and had ducked down inside the car when she saw the shooter, so she could not provide a very detailed description. Toney described the shooter as an African-American male, dressed in black with a black hood over his head, and some braids or dreadlocks protruding from edges of the hood and reaching down below his neckline.

The day after the shooting, Appleby contacted police and identified defendant as the shooter. He also told the district attorney investigator where to find the buried casings. Describing defendant to police, Appleby said defendant had short, kinky hair. A booking photograph of defendant, taken a month after the shooting, however, showed defendant with curls down to his shoulders.

Defendant told police that he did not think he was on Odea Drive the day of the shooting and denied ever owning an El Camino. Costello, however, confirmed that defendant was present on Odea Drive, driving an El Camino, on the afternoon of the shooting and was there right before the shooting. Department of Motor Vehicle records confirmed that an El Camino was sold to defendant on February 1, 2004.

Respondent's Lodged Document 4, pp. 2-4.

IV.  Discussion

     A.  Claim One:  Denial of Pre-Trial Marsden Motion

     Petitioner alleges that the trial court improperly denied his November 30, 2004 Marsden[1] motion.  Petitioner also argues that the trial court did not adequately question his counsel during the hearing on this motion.

---

[1]  People v. Marsden, 2 Cal.3d 118 (1970).

1          *Procedural Default*

2          Respondent argues that claim one is procedurally defaulted.  Respondent contends

3  that petitioner raised this claim in his habeas petition filed in the California Supreme Court,

4  which the California Supreme denied by order citing In re Robbins, 18 Cal.4th 770, 780 (1998),

5  In re Clark, 5 Cal.4th 750 (1993), and In re Swain, 34 Cal.2d 300, 304 (1949).  (Respondent's

6  Lodged Document 14.)

7          Petitioner also raised this claim on direct appeal.  The California Court of Appeal

8  issued an opinion addressing the merits of this claim.  (Respondent's Lodged Document 2.)  The

9  California Supreme Court denied petitioner's petition for review, which raised this claim, by an

10  order citing no cases.  (Respondent's Lodged Documents 3, 4.)  Therefore, the California

11  Supreme Court denied this claim on the merits.[2]  Barker v. Fleming, 423 F.3d 1085, 1091 (9th

12  Cir. 2005), citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (where more than one state

13  court has adjudicated petitioner's claims, a federal habeas court analyzes the last reasoned

14  decision; later unexplained orders, upholding a judgment or rejecting the same claim, rests upon

15  the same ground as the prior order).

16          Petitioner has not defaulted on claim one because, in denying the petition for

17  review, the California Supreme Court considered this claim on the merits.  A claim cannot be

18  defaulted when it was previously denied on the merits.  Accordingly, respondent's argument that

19  claim one is procedurally barred is without merit.

20          *Legal Standard*

21          Denial of a motion pursuant to People v. Marsden may implicate the Sixth

22  Amendment right to counsel.  Schell v. Witek, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc).

23

24          [2]  Petitioner filed a pro se petition for review.  (Respondent's Lodged Document 5.)  This
petition consisted of a copy of a letter to petitioner from appellate counsel stating that she had
decided not to pursue his case further and a copy of the opinion by the California Court of
25  Appeal.  (Id.)  Respondent may be suggesting that the petition for review was not legally
adequate.  The record indicates that the California Supreme Court considered the merits of the
26  petition and did not find it procedurally defective.

1   Therefore, when a criminal defendant makes a request for substitution of counsel, the trial court

2   is constitutionally required to inquire into the defendant's reasons for wanting a new attorney.

3   Schell, 218 F.3d at 1025 ("[I]t is well established and clear that the Sixth Amendment requires

4   on the record an appropriate inquiry into the grounds for such a motion, and that the matter be

5   resolved on the merits before the case goes forward."); see also Stenson v. Lambert, 504 F.3d

6   873, 886 (9th Cir. 2007) ("A trial court's inquiry regarding counsel's performance on a motion to

7   substitute counsel should be such necessary inquiry as might ease the defendant's dissatisfaction,

8   distrust and concern.") (citation and internal quotation marks omitted).  For an indigent

9   defendant, such an inquiry can serve to protect against constitutional injury because the failure to

10   provide substitute counsel "may result in a denial of the constitutional right to effective

11   assistance of counsel if the defendant and his attorney are embroiled in an 'irreconcilable

12   conflict.'"  United States v. Mills, 597 F.2d 693, 700 (9th Cir. 1979) (internal citations omitted).

13          In reviewing a federal habeas claim based on the denial of a substitution motion,

14   "the ultimate constitutional question the federal courts must answer" is whether the state trial

15   court's disposition of the motion violated a petitioner's constitutional rights because the conflict

16   between the petitioner and appointed counsel "had become so great that it resulted in a total lack

17   of communication or other significant impediment that resulted in turn in an attorney-client

18   relationship that fell short of that required by the Sixth Amendment."  Schell, 218 F.3d at 1026.

19   If the reviewing court determines that a conflict developed between the petitioner and appointed

20   counsel so serious that it "resulted in the constructive denial of assistance of counsel, no further

21   showing of prejudice is required."  Schell, 218 F.3d at 1027-28 (citing Strickland v. Washington,

22   466 U.S. 668, 692 (1984)).  On the other hand, "not every conflict or disagreement between the

23   defendant and counsel implicates Sixth Amendment rights."  Schell, 218 F.3d at 1027 (citing

24   Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (holding that the Sixth Amendment does not

25   guarantee a "meaningful relationship" between defendant and counsel)); see also Stenson, 504

26   F.3d at 886 ("An irreconcilable conflict in violation of the Sixth Amendment occurs only where

1  there is a complete breakdown in communication between the attorney and client, and the

2  breakdown prevents effective assistance of counsel.  Disagreements over strategic or tactical

3  decisions do not rise to [the] level of a complete breakdown in communication.")

4         As explained by the Ninth Circuit:

5         The test for determining whether the trial judge should have granted a substitution
       motion is the same as the test for determining whether an irreconcilable conflict
6         existed. The court must consider: (1) the extent of the conflict; (2) whether the
       trial judge made an appropriate inquiry into the extent of the conflict; and (3) the
7         timeliness of the motion to substitute counsel.

8  Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

9         *Analysis*

10        The undersigned will first summarize the Marsden hearing.  (Respondent's

11  Lodged Document 16, volume II.)

12        The trial court began the hearing by asking petitioner how his counsel had not

13  properly represented him.  (Id. at 4.)  Petitioner responded that trial counsel wanted to pursue an

14  imperfect self defense, which involved him admitting that he was present at the scene.  (Id.)

15  Petitioner objected to such a defense because he was not present at the crime scene and was

16  innocent.  (Id.)  Petitioner also complained that he had not received all discovery from trial

17  counsel.  (Id. at 5.)  Petitioner stated that he had not been allowed to fully watch the tapes and

18  videotapes of witnesses.  (Id.)  Petitioner also complained that there had been no motions filed in

19  his case.  (Id.)  Petitioner claimed that his lawyer had not obtained statements from the witnesses,

20  the district attorney or police.  (Id.)

21        In response, trial counsel stated that he had discussed possible defenses with

22  petitioner.  (Id. at 6-7.)  Trial counsel stated that he told petitioner that he did not want to create a

23  false defense, "but I indicated that it appeared to me that the only possible defense in this case

24  was an imperfect self-defense given the facts of this case."  (Id. at 7.)

25        I've indicated that to him twice, mainly because he insists on asking me what our
       defense is going to be.  Every time I've--especially the last time that I mentioned
26         that possibility to him, he got very upset with me.  Consequently, I indicated to

1        him that I would do whatever he thinks needs to be done in this case.  But, of
course, we have no witnesses.

2

3    (Id.)

4           When asked by the trial court if petitioner had provided trial counsel with the

5    names of any witnesses, trial counsel responded,

6           Yes, Your Honor, and I have contacted what would have been a critical witness in
this case, but that person totally destroyed any possible defenses that we may have

7           had by utilizing that person.  And he insisted that we--and when I say "we," I
mean myself and my investigator--that we speak to that person, and we did.  We

8           spoke to that person at least three times that I'm aware of.  And every time we
spoke to that person, that person would not assist us in any manner that would, in

9           fact, hurt our case even more.  So besides that, that person we really had--have no
other witnesses

10

11    (Id.)

12           Trial counsel told the court that although petitioner insisted that he had not viewed

13    all the tapes, it was his understanding from his investigator that petitioner had viewed the tapes.

14    (Id. at 8.)  Trial counsel stated that he had given petitioner all of the reports and "everything that I

15    have."  (Id. at 9.)  Regarding his failure to make any motions, trial counsel stated that he was

16    going to make some motions regarding jury selection and the impeachment of witnesses.  (Id.)

17    However, trial counsel was not aware of any other pretrial motions he could have made.  (Id. at

18    9-10.)

19           Regarding his relationship with petitioner, trial counsel stated,

20           Well, I'm beginning to feel that's true, especially in my last couple of visits with
Mr. Smith.  I've detected in him total mistrust, um, and maybe some other

21           feelings that I'm not going to put on the record.  But, basically, I really think that,
given his attitude, on the last couple of occasion[s] that we have met, it appears

22           that--it does appear that there's no communications with Mr. Smith.  I'm not
going to get any assistance form him.

23

24           I'm just hoping that if the Court doesn't grant his motion, that I'm just hoping that
everything will proceed in a smooth way.  But, basically, I really think the
communications have broken down.  Mr. Smith doesn't trust me now at all.  I

25           think that Mr. Smith feels that if the outcome is unfavorable in this case, that it's
due to the fact that, you know, we've not really communicated, and that we're sort

26           of worlds apart concerning the presentation of this case.

1  (Id. at 10.)

2         The trial court then asked counsel if the prosecution's case would be stronger

3  against petitioner if he called the witness who petitioner wanted him to call.  (Id.)  Trial counsel

4  responded, "Most definitely."  (Id.)  Trial counsel then told the judge,

5              But, um, the problem is not so much that now, the problem is that to be frank with
             you, you know, if it were up to me, I would--I would indicate that another attorney
6              should take over this case, you know, another attorney that Mr. Smith may feel
             more comfortable with.
7

8  (Id. at 11.)

9         Petitioner then told the court that the witness counsel was referring to was his

10  girlfriend.  (Id. at 12.)  Petitioner stated that he wanted counsel to question her again because she

11  told "them" that he was with her at the time of the shooting.  (Id. at 12-13.)

12         The trial court went on to deny petitioner's Marsden motion:

13              Well, having heard both Mr. Mayorga and Mr. Smith, I do find that Mr. Mayorga
             has properly represented you.  He has questioned a witness that you indicated he
14              should question.  He didn't do it once, he did it three times.  Mr. Mayorga has
             read all the discovery in this case.  He's reviewed it.  He's reviewed possible
15              defenses.

16              To the extent that there is a personality conflict between the two people, I do not
             believe that it is such that it is a complete breakdown or a breakdown in the
17              relationship of such a degree that it would make it impossible for Mr. Mayorga to
             properly represent Mr. Smith.  To the extent that there are conflicts between the
18              statements made this morning, I do believe Mr. Mayorga.  I do believe that he has
             not only properly represented you Mr. Smith, but will continue to properly
19              represent him in this case.  And so the motion is denied.

20  (Id. at 15-16.)

21         The California Court of Appeal denied the instant claim for the reasons stated

22  herein:

23              Prior to trial, defendant made a Marsden motion seeking new trial counsel,
             claiming his counsel was not adequately representing him. Defendant contends the
24              trial court prejudicially erred in denying his motion. He contends the testimony at
             the pre-trial Marsden hearing established that there had been "an irreconcilable
25              breakdown in the attorney-client relationship." We find no error.

26              We review this claim under a settled standard. "[S]ubstitute counsel should be

9

appointed when, and only when, necessary under the Marsden standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]." (People v. Smith (1993) 6 Cal.4th 684, 696.) To the extent there is a credibility question between defendant and counsel, the court is entitled to accept counsel's explanation. (Id. at p. 696.) "Moreover, a defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (Id. at pp. 696-697.)

We review the claim of erroneous denial of a Marsden motion under the deferential abuse of discretion standard. (People v. Earp (1999) 20 Cal.4th 826, 876.) "'Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.' [Citations.]" (People v. Hart (1999) 20 Cal.4th 546, 603.)

We agree with the trial court that defendant failed to carry his burden of showing such an irreconcilable conflict that ineffective representation is likely to result. Defendant complained that he wanted to present the defense that he was not the shooter and was not even present at the crime scene. Counsel responded that, on at least three occasions, he and his investigator spoke with the witness defendant claimed supported this defense, but the witness "totally destroyed any possible defenses" that defendant may have had. Accordingly, the only possible defense in counsel's professional judgment, given the facts of the case, was imperfect self-defense. Counsel had explained this to defendant and defendant had become angry.

Defendant's complaint did not warrant the appointment of new counsel. A conflict over the tactical decisions or the trial strategy to pursue does not constitute the type of "irreconcilable conflict" that indicates that counsel's representation has become inadequate. (People v. Welch (1999) 20 Cal.4th 701, 728-729.) When counsel represents a defendant, counsel is the "captain of the ship" and can make all but the most fundamental decisions for his client. (Id. at p. 729.)

Defendant also complained that he had not received and reviewed all the discovery and his attorney had not filed any motions, and in particular, a section 995 motion. Counsel responded that his investigator viewed all the relevant tapes with defendant and counsel had provided defendant with copies of all the written discovery. The trial court expressly stated it found counsel's statements credible. Counsel also stated that a section 995 motion was not available in this case and there were no other appropriate pretrial motions to be made. Counsel did intend, as the court was aware, to file certain motions regarding jury selection and a motion in limine regarding witness impeachment. But there were no other appropriate motions available.

Defendant also complained that he did not feel comfortable with his attorney, that he did not have a good "gut feeling," and that they did not have any relationship

whatsoever. When asked to comment on defendant's statement that they had no relationship, counsel stated that he was "beginning to feel that that's true, especially in my last couple of visits." Counsel said defendant did not appear to trust him at all and that, given defendant's attitude, counsel did not think he was going to get any assistance from him. Accordingly, counsel stated that defendant might be better off with another attorney with whom defendant felt more comfortable.

A defendant, however, "cannot simply refuse to cooperate with his appointed attorney and thereby compel the court to remove that attorney. '"[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.'" (People v. Michaels (2002) 28 Cal.4th 486, 523.) Here, the "conflict" consisted primarily of disagreement over tactics and defendant's belief that counsel had not provided him discovery or made appropriate motions (which the trial court rejected as unsubstantiated), neither of which is sufficient to establish a fatal conflict and compel the substitution of counsel.

Finally, defendant complained that counsel did not have statements from all the witnesses from whom the district attorney had taken statements. Counsel explained that they had tapes of all the interviews. Counsel had also tried to interview a young boy who was a witness and had given a statement to the police, but the boy's mother refused to allow counsel to speak to the boy and refused to permit the boy to testify. Counsel noted, however, that this was to defendant's advantage since the boy's testimony would be harmful to defendant's case.

In sum, the record does not demonstrate that defendant's attorney was not providing effective representation or that defendant and his attorney had become embroiled in such an irreconcilable conflict that ineffective representation was likely to result. Thus, the trial court did not abuse its discretion in concluding that defendant had not shown that a failure to replace defendant's counsel would substantially impair defendant's right to the effective assistance of counsel.

(Respondent's Lodged Document 2, pp. 4-8.)

At the outset, the undersigned finds that the trial court's inquiry was adequate. A trial court's inquiry regarding counsel's performance on a motion to substitute counsel should be "such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern." United States v. Garcia, 924 F.2d 925, 926 (9th Cir. 1991) (internal quotation marks and citation omitted). It also should provide a "sufficient basis for reaching an informed decision[ ]" regarding whether to appoint new counsel. United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986). The trial court gave petitioner adequate opportunity to discuss his grievances. The

1  trial court also gave trial counsel an adequate opportunity to respond.  Accordingly, petitioner's

2  claim that the trial court's inquiry was inadequate is without merit.

3         The California Court of Appeal's denial of petitioner's claim challenging the trial

4  court's denial of his motion for substitute counsel was not an unreasonable application of clearly

5  established Supreme Court authority.  Petitioner first objected to trial counsel's continued

6  representation because he would not pursue the alibi defense petitioner requested.  However, trial

7  counsel told the court that there was no basis for this alibi defense.  Trial counsel stated that on

8  three occasions he had questioned petitioner's girlfriend, who petitioner claim would have

9  provided his alibi, but she apparently was unable to assist in this defense.  In fact, trial counsel

10  told the court that if she testified, it would help the prosecution.  Petitioner's disagreement with

11  trial counsel over tactical decisions within the sphere of counsel's professional judgment did not

12  entitle him to new counsel.  Schell v. Witek, 218 F.3d at 1026.

13         Petitioner's request for new counsel based on trial counsel's failure to provide him

14  with records and the opportunity to review the tapes was not supported by the record.

15         Finally, although trial counsel expressed concern based on petitioner's failure to

16  cooperate with him, the conflict was of petitioner's own making based on his refusal to accept

17  counsel's professional opinion that the only viable defense was imperfect self-defense.  This

18  disagreement did not amount to a denial of petitioner's Sixth Amendment rights.  Schell, 218

19  F.3d at 1026; see also Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) ("[W]e

20  are not aware of any [Supreme Court case] that stands for the proposition that the Sixth

21  Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of

22  interest, but with whom the defendant refuses to cooperate because of dislike or distrust.").[3]

23

24         [3] As will be discussed below, the trial court denied trial counsel's request for an
   imperfect self-defense jury instruction because it was not supported by the evidence.  Instead, the
25  trial court granted counsel's request for a heat of passion manslaughter instruction.  In his closing
   argument, trial counsel argued primarily that Appleby had fabricated petitioner's involvement in
26  the shooting because he was mad at him.  While this defense was not particularly strong,

1    As stated above, the denial of this claim by the California Court of Appeal was

2 not an unreasonable application of clearly established Supreme Court authority.  Accordingly,

3 this claim should be denied.

4    B.  Claim Two:  Failure to Conduct Marsden Hearing Post-Verdict

5    *Procedural Default*

6    Respondent argues that this claim is procedurally defaulted on the same grounds

7 as claim one.  Like claim one, claim two was raised on direct appeal where, for the reasons

8 discussed above, it was denied on the merits by both the California Court of Appeal and

9 California Supreme Court.  (Respondent's Lodged Documents 2-4).  For the reasons discussed

10 above, respondent's argument that claim two is procedurally barred is without merit.

11    *Analysis*

12    At the beginning of the sentencing hearing on January 10, 2005, petitioner told the

13 court that he would, "like to request a lawyer to determine if my--if my lawyer--if my lawyer was

14 ineffective and to file a new trial motion for new trial."  (Respondent's Lodged Document 16,

15 Volume I at 226.)   The trial court then asked petitioner what the grounds of his new trial motion

16 would be.  (Id.)  Petitioner responded that the grounds of his new trial motion would be

17 ineffective assistance of counsel based on the claims raised at the earlier Marsden motion.  (Id.)

18 Petitioner went on to argue that if counsel had conducted an adequate investigation, "he would

19 have found out that there were another witness that described the shooter as a light skin

20 complected with long hair with small beard that coincided with the witness Michelle Toney's

21 testimony–description of the shooter."  (Id. at 227.)  Petitioner also argued that counsel was

22 ineffective for failing to present evidence that Scott Appleby had been incarcerated in an insane

23 asylum for the attempted murder of his wife.  (Id.)

24

25 unfortunately there were no good defenses for petitioner.  Counsel's representation at the
   Marsden hearing that he would focus on imperfect self-defense was based on his not
26 unreasonable assessment of the evidence at that time.

13

1    The trial court then denied his motion for a new trial and for appointment of

2    substitute counsel: "Based on applicable case law, the Court denies your motion for a new trial.  I

3    also decline to appoint an attorney to represent you at this time."  (Id.)

4    The California Court of Appeal denied this claim for the reasons stated herein:

Defendant also contends the trial court erred in failing to conduct a post-verdict
Marsden hearing when defendant requested new counsel be appointed for the
purpose of making a motion for a new trial based on ineffective assistance of trial
counsel. Alternatively, he contends the trial court erred in not appointing new
counsel to prepare and file a new trial motion. We disagree with both contentions.

When a defendant requests substitution of new counsel after trial in order to assist
in the preparation of a motion for new trial based on the inadequacy of trial
counsel, the court must, as a preliminary matter, elicit from defendant the reasons
he believes he was inadequately represented at trial. (People v. Stewart (1985) 171
Cal.App.3d 388, 395, disapproved on other grounds in People v. Smith, supra, 6
Cal.4th 684, 694-696.) This can be done in camera or in open court. (People v.
Winbush (1988) 205 Cal.App.3d 987, 991.)  "Once a trial judge is informed of the
facts underlying a defendant's claim of inadequate assistance, he [or she] is then in
a position to intelligently determine whether he [or she] may fairly rule on the
defendant's motion for a new trial, or whether new counsel should be appointed to
more fully develop the claim of inadequate representation." (People v. Stewart,
supra, 171 Cal.App.3d at pp. 395-396.)

Here, contrary to defendant's assertion on appeal, the trial court did permit
defendant to set forth the reasons he believed new counsel and a new trial were
warranted. Upon defendant's request for a new attorney to bring a new trial
motion, the trial court asked him: "What would the basis of your new trial motion
be, sir?"

Defendant began by rehashing the complaints against counsel he had raised at the
pre-trial Marsden hearing. In addition to those complaints, defendant also
complained that counsel did not investigate or present evidence at trial that
"Appleby had been incarcerated in the insane asylum for the mentally disturbed
for the attempted murder of his wife." He believed such evidence would have
impeached Appleby's testimony. Defendant also insisted that there was another
eyewitness who would provide a physical description of the shooter as having a
light complexion, long hair and a small beard--a description that coincided with
Toney's description of the shooter as having long braids or curls and contradicted
Appleby's description of defendant as having short, kinky hair. He claimed his
counsel was ineffective for not investigating this witness and that it was a basis
for a new trial.

The trial court then ruled as follows: "Based on applicable case law, the Court
denies your motion for new trial. I also decline to appoint an attorney to represent
you at this time."

Although conducted in open court, the trial court adequately permitted defendant

14

to state the grounds upon which he believed a new trial motion should be granted. The trial court's denial of defendant's <u>Marsden</u> motion was also proper, as defendant failed to present any grounds warranting further action by the court.

Trial counsel had already refuted most of defendant's claims during the pre-trial <u>Marsden</u> hearing. Defendant's added claim that counsel was ineffective for failing to pursue evidence of Appleby's alleged incarceration in a mental health facility did not require the appointment of new counsel to prepare and file a motion for new trial. In order to prevail on a motion for new trial based on ineffective assistance of counsel, "defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" (<u>People v. Andrade</u> (2000) 79 Cal.App.4th 651, 659-660, quoting <u>Strickland v. Washington</u> (1984) 466 U.S. 668, 686 [80 L.Ed.2d 674, 692-693].)

Appleby's numerous prior convictions were discussed prior to trial. Defense counsel made a successful motion in limine permitting impeachment of Appleby with several of those prior convictions. Defendant's accusation that counsel was ineffective for failing to pursue Appleby's alleged incarceration in a mental health facility did not make a colorable claim that counsel's performance was deficient. At best, it was merely speculative information of marginal relevance and questionable admissibility. Accordingly, the trial court properly refused to appoint new counsel to bring a new trial motion for that purpose.

Likewise, defendant's claim that counsel was ineffective and a new trial was required because counsel did not investigate another eyewitness who would provide a physical description of the shooter as having long hair lacked merit. This alleged evidence did not support defendant's allegation of ineffective representation or his request for a new trial. In fact, it would have been further identification evidence supporting the People's case.

The witness defendant claims his counsel should have investigated would, according to defendant, state that the shooter had long hair and a small beard. This description coincided with Toney's description of the shooter as having long braids or curls and contradicted Appleby's description of defendant as having short, kinky hair. Defendant appears to believe this evidence would have been helpful in discrediting Appleby's testimony.

Appleby's description of defendant to the investigating officer as having very short, kinky hair, however, had already been thoroughly discredited by the evidence. At trial, Appleby testified that he had never seen defendant's hair because defendant always wore a hat or a wrap. Moreover, a booking photograph of defendant taken only one month after the shooting depicted defendant with curls down to his shoulders. Thus, the booking photograph showed that defendant resembled Toney's description of the shooter as having long braids or curls. Testimony from another witness that the shooter had long hair would not have assisted defendant in any way.

When a defendant's claim of ineffective assistance of counsel relates to courtroom

events observed by the trial court, the trial court is generally able to resolve the new trial motion without appointing new counsel. (People v. Smith, supra, 6 Cal.4th 684, 692.) But even when the claim relates to matters outside the courtroom, the defendant must make a colorable claim of inadequacy of counsel before the court may, in its discretion, appoint new counsel to assist in moving for a new trial. (Id. at p. 693; see People v. Diaz (1992) 3 Cal.4th 495, 573-574.) New counsel should not be appointed without a proper showing. (People v. Smith, supra, 6 Cal.4th 684, 696.)

Here, defendant did not make the requisite showing. We find no abuse of discretion in the trial court's refusal to appoint new counsel to explore defendant's claims in inadequate representation.

(Respondent's Lodged Document 2, pp. 8-12.)

The Sixth and Fourteenth Amendments guarantee an individual brought to criminal trial in state or federal court the right to assistance of counsel. Faretta v. California, 422 U.S. 806, 807 (1975). A trial is unfair if an accused individual is denied counsel at a critical stage of his trial. United States v. Cronic, 466 U.S. 648, 659 (1984). The Ninth Circuit has long held that "there can be little question that the motion for a new trial under California law is a critical stage of the prosecution." Menefield v. Borg, 881 F.2d 696, 699 (9th Cir. 1989). Thus, criminal defendants are entitled to the assistance of competent counsel at a motion for a new trial. Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir. 1990) (citing Menefield v. Borg, 881 F.2d at 699). "Counsel" may be either trial counsel or substitute counsel appointed for purposes of hearing the new trial motion. Jackson, supra, 881 F.2d at 888. "There is no automatic right to a substitution of counsel simply because the defendant informs the trial court that he is dissatisfied with appointed counsel's performance." Id. However, "a trial judge is required to order a substitution of counsel if, after a hearing, it is demonstrated that there is a breakdown in the attorney-client relationship or that an actual conflict of interest existed." Id., citing Wood v. Georgia, 450 U.S. 261, 273-74 (1981). "Holding a hearing to review a defendant's ... claim insures that the trial is fundamentally fair." Id.

In the instant case, when petitioner asked for new counsel to be appointed so that he could make a new trial motion based on ineffective assistance of counsel, the trial court asked

1   petitioner to describe the grounds of the new trial motion.  Petitioner described the grounds of his

2   new trial motion as being the same as his pre-trial Marsden motion.  Petitioner also raised new

3   claims of ineffective assistance based on counsel's failure to discover a witness who would have

4   provided a physical description of the shooter consistent with Toney's description as well as

5   counsel's failure to impeach Appleby with his previous incarceration in an insane asylum.

6          Although the trial court did not conduct a Marsden hearing, it gave petitioner an

7   adequate opportunity to set forth the grounds of the new trial motion.  Based on the reasoning of

8   the California Court of Appeal, the undersigned finds that the trial court's denial of the new trial

9   motion was proper.   First, trial counsel had already refuted most of petitioner's claims during the

10  pre-trial Marsden hearing.  Regarding Appleby's prior incarceration in a mental hospital, the

11  California Court of Appeal observed that defense counsel had successfully moved to impeach

12  Appleby with several prior convictions.  Additional impeachment evidence of Appleby based on

13  his previous incarceration in a mental hospital would not likely have changed the outcome of the

14  case.  In addition, as noted by the California Court of Appeal, it was "merely speculative

15  information of marginal relevance and questionable admissibility."  Regarding petitioner's claim

16  that counsel failed to investigate a witness who would testify that the shooter had long hair, the

17  California Court of Appeal noted that this evidence would have supported the People's case.

18         Because petitioners motion for a new trial was without merit, the trial court did

19  not err in failing to hold a formal Marsden hearing where trial counsel could have addressed

20  petitioner's new claims of ineffective assistance.  The trial court was not required to conduct a

21  Marsden hearing to determine whether new counsel should be appointed a criminal defendant in

22  a new trial motion that it found meritless.

23         Moreover, the grounds of the new trial motion were the same as the grounds of

24  petitioner's motion for substitute counsel.  The trial court had already rejected the majority of

25  these grounds in its previous order denying petitioner's Marsden motion discussed above.  For

26  the reasons stated by the California Court of Appeal, the record did not support the two new

17

claims raised by petitioner in support of his motion for substitute counsel to represent him on his new trial motion.  For these reasons, the trial court's inquiry into the grounds of petitioner's request for substitute counsel was adequate.  The trial court's denial of petitioner's motion for substitute counsel was appropriate because petitioner did not present an adequate conflict with counsel.

The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

### C.  Claim Three:  Trial Court Refused to Allow Petitioner to File Motions for New Trial

*Procedural Default*

Respondent argues that this claim is procedurally defaulted on the same grounds as claim one.  Like claims one and two, claim three was raised on direct appeal where, for the reasons discussed above, it was denied on the merits by both the California Court of Appeal and California Supreme Court.  (Respondent's Lodged Documents 2-4).  For the reasons discussed above, respondent's argument that claim three is procedurally barred is without merit.

*Analysis*

Petitioner alleges that the trial court violated his constitutional rights by refusing to allow him to "go pro per" and proceed with two new trial motions.  Petitioner is challenging the trial court's refusal to grant him a continuance to file his pro per motion for a new trial after it denied his motion for motion a new trial discussed in claim two above:

> Court: Based on the applicable law, the Court denies your motion for a new trial. I also decline to appoint an attorney to represent you at this time.  You obviously will have an opportunity to have a lawyer appointed to you free of charge for your appeal.
>
> Petitioner: Okay.  Since I don't have a motion--an attorney to file a new trial motion, I would like to go pro per and file my own motion.
>
> Court: Well, you can go ahead and do that, sir, but I'm not going to delay

18

1    judgment and sentence for that purpose.  Based on what you indicated to this
     Court, I see no legal basis by which you have any chance of challenge--what
2    you're seeking to challenge by way of a new trial motion.
     On the other hand, you will have an opportunity through court-appointed attorney
3    to appeal not only the sentence that will be imposed today, but everything and
     anything that occurred during the course of the trial or any other proceeding in
4    your case.

5         Petitioner: Well, I would like to submit a writ of mandate to--for stay of sentence
          until appeal can be--could--your appeal ruling could be discussed or looked over
6         with the district of the Court or something.

7         Court: That motion is denied.

8    (RT at 227-28.)

9         The California Court of Appeal denied this claim for the reasons stated herein:

10        Finally, defendant contends the trial court prejudicially erred in failing to grant his
          request to file a pro se motion for new trial. We find no error in the trial court's
11        rulings.

12        After the trial court denied defendant's motion for a new trial and defendant's
          request for new counsel, defendant requested permission to file his own written
13        motion for a new trial. The trial court replied: "Well, you can go ahead and do
          that, sir, but I'm not going to delay judgment and sentence for that purpose. Based
14        on what you indicated to this Court, I see no legal basis by which you have any
          chance of challenge--what you're seeking to challenge by way of a new trial
15        motion."

16        Thus, contrary to defendant's contention, the trial court did not deny defendant's
          request to file a pro se motion for new trial. Instead, after ruling on defendant's
17        oral motion for new trial, the trial court simply declined to grant a continuance for
          the purpose of allowing defendant time to file a written motion of the same kind.
18
          Pursuant to section 1050, a continuance may be granted only upon a showing of
19        good cause; whether a defendant has made a sufficient showing rests within the
          sound discretion of the trial judge. (People v. Howard (1992) 1 Cal.4th 1132,
20        1171.) The burden is on the defendant to establish an abuse of discretion. (People
          v. Rhines (1982) 131 Cal.App.3d 498, 506.)
21
          Here, the only "good cause" defendant could offer was trial counsel's ineffective
22        representation at trial, a point he failed to establish just moments before.
          Defendant failed to identify any facts that could possibly make a difference in the
23        outcome, so as to warrant a continuance for him to prepare a written new trial
          motion. He thus has failed to show any abuse of discretion, error, or prejudice in
24        the trial court's failure to grant a continuance.

25   (Respondent's Lodged Document 2, pp. 12-14.)

26        As correctly observed by the California Court of Appeal, the trial court did not

19

1  deny petitioner's request to file a pro se motion for new trial.  Instead, the trial court denied

2  petitioner's motion for a continuance to file this motion.

3     It is well-established that the decision to grant or deny a requested continuance

4  lies within the broad discretion of the trial court, <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964),

5  and that the improper denial of a requested continuance warrants habeas relief only if there is a

6  showing of actual prejudice to petitioner's defense resulting from the trial court's refusal to grant

7  a continuance, <u>Gallego v. McDaniel</u>, 124 F.3d 1065, 1072 (9th Cir. 1997).

8     The trial court denied the request for a continuance because the grounds for this

9  motion, as presented by petitioner, were without merit.  Under these circumstances, it cannot be

10  said that the trial court abused its discretion in denying petitioner's request for a continuance to

11  file his motion for a new trial.

12     The denial of this claim by the California Court of Appeal was not an

13  unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

14  should be denied.

15     D.  <u>Claim Four:  Trial Court Improperly Responded to Jury Inquiry Regarding
     Jury Instructions</u>

16

17     *Procedural Bar*

18     Respondent argues that claim four is procedurally barred because the California

19  Supreme Court denied the petition raising this claim by order citing <u>In re Dixon</u>.  (Respondent's

20  Lodged Document 13.)

21     Federal courts may reach the merits of habeas petitions despite an asserted

22  procedural bar so long as they are clearly not meritorious.  <u>Franklin v. Johnson</u>, 290 F.3d 1223,

23  1232 (9th Cir. 2002), citing <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997).  Because the

24  instant claim is without merit, the undersigned will not reach the procedural bar issue.

25     Because no state court has considered the merits of this claim, the undersigned

26  conducts a de novo review.  <u>Nulph v. Cook</u>, 333 F.2d 1052, 1056 (9th Cir. 2003); <u>Pirtle v.</u>

20

1   Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

2           *Analysis*

3           Petitioner argues that the trial court improperly responded to the following

4   question submitted by the jury during deliberations: "What is the legal difference between malice

5   aforethought and premeditation?"  (CT at 190.)  The trial court responded,

6           "Malice," express or implied relates to the element of intent, that is an intent to
            kill.  See Jury Instruction number 8.11.

7

8           "Premeditation" relates to the nature and extent of reflection required to constitute
            premeditation and deliberation for first degree murder.  See Jury Instruction
            number 8.20.

9

10  (CT at 194.)

11          Petitioner argues that the trial court's response to the jury's inquiry was

12  "ambiguous, inadequate, improper and misleading."   Petitioner argues that the trial court's

13  response failed to distinguish between malice aforethought and premeditation.

14           Where the initial instruction accurately states applicable law, as petitioner does

15  not dispute, it is not error to refer the jury to the original instructions.  Arizona v. Johnson, 351

16  F.3d 988, 993-94 (9th Cir. 2003).  Thus, there can be no prejudicial error for the failure to

17  provide additional guidance.  See Beardslee v. Woodford, 358 F.3d 560, 575 (9th Cir. 2004).   In

18  responding to the jury's question, the trial judge responded with a brief explanation of each

19  concept then referred to the jury instructions in which they were defined.  There was nothing

20  improper about this response.  For these reasons, the instant claim is without merit and should be

21  denied.

22          E.  Claim Five:  Sentencing Error

23          *Procedural Default*

24          Respondent argues that claim five is procedurally barred because the California

25  Supreme Court denied the petition raising this claim by order citing In re Dixon, 41 Cal.2d 756

26  (1953).  (Respondent's Lodged Document 13.)

21

1    Federal courts may reach the merits of habeas petitions despite an asserted

2 procedural bar so long as they are clearly not meritorious.  Franklin v. Johnson, 290 F.3d 1223,

3 1232 (9lth Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997).  Because the

4 instant claim is without merit, the undersigned will not reach the procedural bar issue.

5    Because no state court has considered the merits of this claim, the undersigned

6 conducts a de novo review.  Nulph v. Cook, 333 F.2d 1052, 1056 (9th Cir. 2003); Pirtle v.

7 Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

8    *Analysis*

9    Petitioner alleges that the trial court improperly sentenced him to a 25 year

10 consecutive sentence pursuant to California Penal Code § 12022.53.  This section provides, in

11 relevant part,

12    Notwithstanding any other provision of law, any person who, in the commission
     of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of
13    Section 12034, personally and intentionally discharges a firearm and proximately
     causes great bodily injury, as defined in Section 12022.7, or death, to any person
14    other than an accomplice, shall be punished by an additional and consecutive term
     of imprisonment in the state prison for 25 years to life.

15

16 Cal. Penal Code § 12022.53(d).

17    Petitioner was convicted of second degree murder, which is specified in

18 subdivision (a) of § 12022.53.  The jury also found that petitioner used and discharged a firearm

19 in the commission of the offense within the meaning of § 12022.53.  (RT at 218.)

20    Petitioner appears to argue that his consecutive sentences violate California Penal

21 Code § 654 which precludes multiple punishment for a single act or indivisible course of conduct

22 punishable under more than one criminal statute.  Federal courts must defer to the state courts'

23 interpretation of state sentencing laws.  See Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993).

24 "Absent a showing of fundamental unfairness, a state court's misapplication of its own

25 sentencing laws does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th

26 Cir. 1994).

In <u>People v. Palacios</u>, 41 Cal.4th 720, 723 (2007), the California Supreme Court held the sentence enhancement provisions of § 12022.53 are not subject to the multiple punishment prohibition of § 654.  Accordingly, petitioner's claim that his sentence violates § 654 is without merit.

Petitioner also suggests that the trial court abused its discretion in sentencing him to 25 years to life pursuant to § 12022.53.  Petitioner's suggestion that the trial court abused its discretion in imposing this sentence is without merit because this section required the trial court to impose this sentence.

Finally, petitioner may also be arguing that his sentence pursuant to § 12022.53 was improper because it was not based on a jury finding.  In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Id</u>. at 490.  However, the jury specifically found that petitioner used the firearm within the meaning of § 12022.53.  (RT at 218.)  Petitioner's <u>Apprendi</u> claim is without merit.

For the reasons discussed above, this claim should be denied.

F.  <u>Claim Six:  Jury Instruction Error</u>

*Procedural Bar*

Respondent argues that claim six is procedurally barred because it was denied by the California Supreme Court by order citing <u>In re Dixon</u>, 41 Cal.2d 756 (1953.)  (Respondent's Lodged Document 13.)  Respondent also argues that this claim is barred because the Superior Court denied it on procedural grounds as well.  (Respondent's Exhibit 11.)

Because the claim is without merit, the undersigned will not reach the procedural bar issue.  <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002), citing <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997).

The Sacramento County Superior Court went on to address the merits of this

1   claim. (Respondent's Lodged Document 11.)  Accordingly, the undersigned considers whether

2   the denial of this claim by the Superior Court was an unreasonable application of clearly

3   established Supreme Court authority.

4                    *Legal Standard*

5                    A challenge to jury instructions does not generally state a federal constitutional

6   claim. See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v.

7   Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the

8   interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62 (1981); see also

9   Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381

10  (9th Cir. 1986).  The standard of review for a federal habeas court "is limited to deciding whether

11  a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)."

12  Estelle v. McGuire, 502 U.S. at 68.  In order for error in the state trial proceedings to reach the

13  level of a due process violation, the error had to be one involving "fundamental fairness."  Id. at

14  73.  The Supreme Court has defined the category of infractions that violate fundamental fairness

15  very narrowly.  Id.

16                   Where what is at issue is the failure to give an instruction, petitioner's burden is

17  "especially heavy" because it has been held that "[a]n omission or an incomplete instruction is

18  less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145,

19  155.  (1977).  Moreover, a trial judge need not instruct on a defense which would be inconsistent

20  with petitioner's theory of the case.  Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984).

21  Failure to give a jury instruction under these circumstances will not amount to a due process

22  violation.  Id.

23                   Furthermore, the Supreme Court has held that there is no unreasonable application

24  of federal law where a state appellate court decided that a jury instruction's single incorrect

25  statement of the "imperfect self-defense" standard did not render the instruction reasonably likely

26  to have misled the jury.  Middleton v. McNeil, 541 U.S. 433 (2004).

1    *Analysis*

2    Petitioner argues that the trial court failed to instruct the jury sua sponte on

3    involuntary manslaughter.

4    In 1980, the Supreme Court held that a defendant in a capital murder case has a

5    constitutional right to have the jury instructed on a lesser included offense, <u>Beck v. Alabama</u>,

6    447 U.S. 625, 638 (1980), but specifically reserved judgment on whether the Due Process Clause

7    requires such an instruction in a noncapital case. <u>Id</u>. at 638 n.7. Accordingly, the failure to give

8    the involuntary manslaughter instruction did not violate clearly established Supreme Court

9    authority. <u>Solis v. Garcia</u>, 219 F.3d 922, 928-29 (9th Cir. 2000).

10   Moreover, the evidence did not support an involuntary manslaughter instruction.

11   Under California law, involuntary manslaughter is defined as an unlawful killing without malice

12   aforethought "in the commission of an unlawful act, not amounting to [a] felony; or in the

13   commission of a lawful act which might produce death, in an unlawful manner, or without due

14   caution and circumspection." (Cal. Penal Code § 192 (b)). Petitioner's shooting of the victim did

15   not constitute an unlawful act not amounting to a felony or a lawful act. Had the jury been given

16   the involuntary manslaughter instruction, it is highly unlikely that they would have found him

17   guilty of this lesser offense.

18   The trial court's failure to sua sponte give the involuntary manslaughter

19   instruction did not violate fundamental fairness. After conducting an AEDPA review, the

20   undersigned recommends that this claim be denied.

21   G.  <u>Claim Seven:  Trial Court Admitting T-Shirt Evidence</u>

22   *Procedural Bar*

23   Respondent argues that claim seven is procedurally defaulted. Respondent

24   contends that petitioner raised this claim in his habeas petition filed in the California Supreme

25   Court, which the California Supreme denied by order citing <u>In re Robbins</u>, 18 Cal.4th 770, 780

26   (1998), <u>In re Clark</u>, 5 Cal.4th 750 (1993), and <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949).

(Respondent's Lodged Document 14.)

Because the claim is without merit, the undersigned will not reach the procedural bar issue.  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

Because no state court has considered the merits of this claim, the undersigned conducts a de novo review.  Nulph v. Cook, 333 F.2d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

*Analysis*

During his direct examination of witness Costello, the prosecutor asked about a t-shirt found on his car.  Petitioner's trial counsel then objected, after which the trial court instructed the jury that it could consider Costello's testimony regarding the t-shirt only as it related to his credibility:

> Prosecutor: Is part of the reason you didn't or you're reluctant to testify because of your family involvement and the places that they live in the same general area?
>
> Costello: Well, my sister still lives in that home.
>
> Prosecutor: And did you get some kind of an item left on your car the last few weeks that you think may or may not be a threat so that would give you concern?
>
> Petitioner's Counsel: Judge, I'm going to object.  Can we approach?
>
> Court: Yeah.
>
> (Discussion held at bench.)
>
> Court: Ladies and gentlemen, you're going to hear some evidence very shortly concerning something that was left on this witness' vehicle.  You are to consider that evidence only as it relates to this witness' credibility in testifying here in this proceeding.  You're not to use it for any other purpose, only to indicate his credibility as a witness.
>
> Please proceed, Mr. Smith.
>
> Prosecutor: Did you have occasion to find something on your car that caused you some concern recently?
>
> Costello: Yeah.

1    Prosecutor: And when did this happen?

2    Costello: One day when I stopped to cash my check at a check cashing place.

3    Prosecutor: Was it days ago?  Weeks ago?  Or months?

4    Costello: Oh, maybe three weeks to a month.

5    Prosecutor: And tell us about the circumstances of what you found.

6    Costello: I found a white t-shirt thrown on the hood of my car with red stains in
     the chest area.

7
     Prosecutor: Any did any thoughts cross your mind about your having to testify in
8    this case and that left on your car?

9    Costello: Yeah.  Thoughts ran across my mind.

10   (RT at 143-44.)

11        Petitioner argues that admission of the t-shirt evidence violated his right to due

12   process because the jury did not get to see the t-shirt, it lowered the prosecution's burden of proof

13   because the defense had not heard of this evidence, and the court's instruction that it was relevant

14   only regarding Costello's credibility did not cure any inference of consciousness of guilt or an

15   intent to intimidate a witness.

16        Petitioner is raising two claims.  First, petitioner appears to argue that admission

17   of the t-shirt violated state law.  Second, petitioner appears to be raising a claim pursuant to

18   Brady v. Maryland, 373 U.S. 83 (1963).  The undersigned will address petitioner's state law error

19   claim first.

20        The Supreme Court has reiterated the standards of review for a federal habeas

21   court.  Estelle v. McGuire, 502 U.S. 62 (1991).  In Estelle v. McGuire, the Supreme Court

22   reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal

23   habeas relief.  The Court held that the Ninth Circuit erred in concluding that the evidence was

24   incorrectly admitted under state law because, "it is not the province of a federal habeas court to

25   reexamine state court determinations on state law questions."  Id. at 67-68.  The Court re-

26   emphasized that "federal habeas corpus relief does not lie for error in state law."  Id. at 67, citing

27

1  Lewis v. Jeffers, 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984) (federal

2  courts may not grant habeas relief where the sole ground presented involves a perceived error of

3  state law, unless such error is so egregious as to amount to a violation of the Due Process or

4  Equal Protection clauses of the Fourteenth Amendment).

5          The Supreme Court further noted that the standard of review for a federal habeas

6  court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of

7  the United States (citations omitted)."  Id. at 68.  The Court also stated that in order for error in

8  the state trial proceedings to reach the level of a due process violation, the error had to be one

9  involving "fundamental fairness," Id. at 73, and that "we 'have defined the category of

10  infractions that violate "fundamental fairness" very narrowly.'"  Id. at 73.  Habeas review does

11  not lie in a claim that the state court erroneously allowed or excluded particular evidence

12  according to state evidentiary rules.  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

13          The prosecutor asked Costello about the t-shirt in an attempt to explain his

14  reluctance to testify.  Appleby had testified that after he saw the stolen car, he told Costello about

15  it. (RT at 61.)  At that time, Costello was in his own driveway.  (RT at 61.)  Appleby testified

16  that he then saw Costello go across the street and get petitioner.  (Id.)  Appleby then saw

17  petitioner and Costello walk down the street toward the stolen car.  (RT at 62.)  He then saw

18  them come running back up the street.  (Id.)  Petitioner then went to his car and Costello went

19  back to his house.  (RT at 63.)  Petitioner got a rifle out of his car.  (Id.)  Appleby saw the stolen

20  car come down the street and stop in front of Costello's house.  (RT at 65.)  Petitioner then

21  walked up to the vehicle and shot the gun at it.  (RT at 65-66.)  Appleby testified that Costello

22  buried the shell casings in his yard.  (RT at 73-74.)

23          At trial, Costello denied that Appleby came up to him and told him that

24  petitioner's stolen car was coming down the street.  (RT at 142.)  Costello denied going across

25  the street and talking to petitioner and pointing out the stolen car.  (Id.)  Costello also denied

26  going down the street to look at the stolen car.  (RT at 143.)  Costello testified that prior to

1   hearing shots, he did not see anybody with a gun.  (RT at 144.)  Costello testified that he did not

2   see defendant in the street after the shooting.  (RT at 145.)  Costello denied burying the shell

3   casings in his yard.  (RT at 146.)

4          While the t-shirt evidence was prejudicial to petitioner, it was relevant to

5   explaining Costello's reluctance to testify.  The trial court did not err in allowing the prosecutor

6   to ask Costello, in essence, whether he felt intimidated by the t-shirt.  The trial court also

7   properly instructed the jury that they could only consider this evidence as it related to Costello's

8   credibility.  Juries are presumed to follow instructions.  <u>Weeks v. Angelone</u>, 528 U.S. 225, 234

9   (2000) (juries are presumed to follow instructions).   For these reasons, admission of the t-shirt

10  evidence did not violate fundamental fairness.

11         Petitioner also suggests that the prosecutor's failure to disclose the t-shirt

12  evidence before trial violated <u>Brady v. Maryland</u>, 375 U.S. 83 (1963).  In <u>Brady</u>, the Supreme

13  Court held that due process requires a prosecutor to produce to a criminal defendant any

14  evidence, material either to guilt or punishment, that is favorable to the accused.  373 U.S. at

15  87-88.  This obligation extends to impeachment evidence and to evidence that was not requested

16  by the defense.  <u>United States v. Bagley</u>, 473 U.S. 667, 676, 682 (1985).  Petitioner's <u>Brady</u>

17  claim fails because the t-shirt evidence was not exculpatory.

18         For the reasons discussed above, petitioner's <u>Brady</u> claim and claim challenging

19  admission of the t-shirt evidence are without merit.  Accordingly, these claims should be denied.

20         H.  <u>Claims Eight through Eleven:  Prosecutorial Misconduct</u>

21             *Procedural Default*

22         Respondent argues that claims eight through eleven are procedurally defaulted.

23  Respondent contends that petitioner raised these claims in his habeas petition filed in the

24  California Supreme Court, which the California Supreme denied by order citing <u>In re Robbins</u>,

25  18 Cal.4th 770, 780 (1998), <u>In re Clark</u>, 5 Cal.4th 750 (1993), and <u>In re Swain</u>, 34 Cal.2d 300,

26  304 (1949).  (Respondent's Lodged Document 14.)

1    Because these claims are without merit, the undersigned will not reach the

2 procedural bar issue.  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix

3 v. Singletary, 520 U.S. 518, 525 (1997).

4    Because no state court has considered the merits of these claims, the undersigned

5 conducts a de novo review.  Nulph v. Cook, 333 F.2d 1052, 1056 (9th Cir. 2003); Pirtle v.

6 Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

7    *Claim Nine*

8    In claim nine, petitioner alleges that the prosecutor violated due process by failing

9 to disclose the t-shirt evidence, discussed in claim seven, to the defense.  In the discussion of

10 claim seven, the undersigned addressed claim nine which alleged a Brady violation.  For the

11 reasons discussed above, claim nine is without merit and should be denied.

12    *Claim Eight*

13    In claim eight, petitioner argues that the prosecutor's closing argument regarding

14 Appleby's identification of him by his hair constituted misconduct.

15    A criminal defendant's due process rights are violated if prosecutorial misconduct

16 renders a trial fundamentally unfair.  Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000)

17 (quoting Darden v. Wainwright, 477 U.S. 168, 183 (1986)).  "[T]he touchstone of due process

18 analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability

19 of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).  Thus, the federal habeas court

20 must distinguish between "ordinary trial error of a prosecutor and that sort of egregious

21 misconduct ... amount[ing] to a denial of constitutional due process."  Donnelly v.

22 DeChristoforo, 416 U.S. 637, 647-48 (1974).

23    In order to determine whether a prosecutor engaged in misconduct, it is necessary

24 to examine the entire proceedings and place the prosecutor's remarks in context.  See United

25 States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in

26 context....").  Relief on such claims is limited to cases in which the petitioner can establish that

prosecutorial misconduct resulted in actual prejudice.  See Johnson v. Sublett, 63 F.3d 926, 930

(9th Cir. 1995) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Darden,

477 U.S. at 181-83.  In this vein, prosecutorial misconduct violates due process when it has a

substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-Sandoval

v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

During arguments, the prosecutor has wide latitude, including the freedom to

argue reasonable inferences based on the evidence.  Menendez v. Terhune, 422 F.3d 1012, 1037

(9th Cir. 2005).  "Counsel are given latitude in the presentation of their closing arguments, and

courts must allow the prosecution to strike hard blows based on the evidence presented and all

reasonable inferences therefrom."  Ceja v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996).

Claim eight concerns the prosecutor's argument regarding Appleby's

identification of petitioner:

> So at that time she's [Michelle Toney] obviously focusing on the gun.  She's
> glancing at him.  She's probably looking--figuring out possible escape things,
> patterns, whether she should jump out of the car, duck down, things of that nature.
> And as she indicated to you, as he came closer, she did, in fact, duck down in the
> fetal position.  And what she could tell you is he was an Afrian American, you
> know, approximate height, weight, and that he had what she believed to be
> dreadlocks or some kind of curls coming down.

> And as I showed you on the big screen, his March photograph, as you'll get to see,
> he does have some braids that are dangling down.  Now, that was about all she
> could tell you about the shooter.  So, clearly based on her testimony alone, you
> can't convict Free Smith, but you can take the evidence, one witness at a time.
> You have to put all the witnesses and put them all together.

> You add to this Scott Appleby.  Now, he's a friend of the Defendant's. And as the
> Defendant told Detective Osborne during his interview himself, I don't know why
> someone would say I was on Odea Street that afternoon, I don't have a problem
> with anybody on Odea Street.  You have heard absolutely no evidence of any kind
> of rift or problem between the two of them.  The clear inference from that is there
> is no reason, whatsoever, that you have before you that Scott Appleby would
> come in and testify against his business partner and say he's the actual shooter.

> You've heard no evidence to the contrary as any kind of possible reason why he
> would do that other than it's simply the truth.  Now, Mr. Mayorga will probably
> stand up here and tell you, well, you know, there was some slight difference in
> description where Mr. Appleby said the hair on the defendant was short and kinky
> at that time.  But if you listen clearly to how that cross-examination went, Mr.

1    Appleby said, I don't know what his hair looked like.  He always had a hat on.  He
     always wore a hat.  I don't know if he had braids or not.

2
     Until Mr. Mayorga said, well, didn't you tell detectives he had short, kinky hair at
3    that time?  He says, yeah, I guess that's what I said.  Now, the sense that I got
     from that--you may disagree, but the sense I got is Mr. Appleby didn't care what
4    kind of hair Mr. Free Smith had.  He always had a hat on.  Never paid attention.
     When he was pressed by detectives to come up with a description, I think of
5    African American, short, kinky hair flashed in his mind.  That's what they have.
     That's what he has.  He didn't think long enough or even care enough, and the
6    person always had a hat on.

7    But, you know, that's such a small point, it doesn't really matter in this case
     because he knows who Free Smith is.  He's worked with him for months.  So we
8    don't need to get caught up in, you know, what little dreadlocks or curls coming
     down versus short, kinky hair because that's really not the issue.  You combine
9    that with the fact that he's--Mr. Appleby has him at the scene, places him there.
     You have another friend Nick Costello who places the Defendant at the scene.
10   Combine that with the defendant's statement to Detective Osborne who says I was
     not on Odea Street that day, I was with my girlfriend.

11
     Now, you have a complete lie to detectives about the very time and manner--very
12   time and day of this crime where he's asked about being there, and he flat out lies
     to them.

13

14   (RT at 183-85.)

15          In claim eight, petitioner contends that the prosecutor's speculation regarding why

16   Appleby stated that petitioner had short, kinky hair constituted misconduct.  Petitioner argues

17   that these "stereotypical comments" were prejudicial and lowered the prosecution's burden of

18   proof.  Petitioner argues that the argument conveyed to the jury that it did not matter what kind of

19   hair petitioner had.

20          This argument was not misconduct.  The undersigned agrees with respondent that

21   the at-issue comments did not carry improper racial overtones or imply that the identification was

22   racially motivated.  Rather, the prosecutor sought to explain Appleby's thought process when he

23   described petitioner's hair.  This claim of prosecutorial misconduct is without merit.

24          *Claim Ten*

25          In claim ten, petitioner argues that the prosecutor committed misconduct by

26   commenting on petitioner's failure to call defense witnesses:

                                        32

1    Now, you have a complete lie to detectives about the very time and manner--very
     time and day of this crime where he's asked about being there, and he flat out lies
2    to them.  We know he's there because, not just one, but two of his friends say he
     was there.  Now, if he was somewhere else such as with his girlfriend as he says
3    so, and his two friends are actually lying, the defense has an opportunity to call
     witnesses such as his girlfriend.  She did not testify in this case.
4
     T-Max was a person that was mentioned that was with him.  T-Max could have
5    come in here and said I never saw him out there or, I was there, and he wasn't the
     shooter.  You never heard from T-Max.  These are logical witnesses that, if they
6    had something to the alternative to say, something to clear him, you would expect
     them to come in and say that, T-Max being a friend of his, and clear his girlfriend-
7    -whatever her name is.  Those are two people that you expect to be here if they
     had something alternatively to say.
8

9    (RT at 185.)

10            The Fifth Amendment precludes a prosecutor from commenting on a defendant's

11   failure to testify.  Griffin v. California, 380 U.S. 609, 615 (1965). The Ninth Circuit has

12   recognized that "[t]he test to determine the existence of a Griffin violation is 'whether the

13   language used was manifestly intended or was of such a character that the jury would naturally

14   and necessarily take it to be a comment on the failure to testify.'"  United States v. Mende, 43

15   F.3d 1298, 1301 (9th Cir. 1995) (quoting United States v. Fleishman, 684 F.2d 1329, 1343 (9th

16   Cir. 1982)); see Beardslee v. Woodford, 358 F.3d 560, 586 (9th Cir. 2004) (stating same test for

17   Griffin error in context of habeas review)). Under this standard, "'a prosecutor may properly

18   comment upon the defendant's failure to present exculpatory evidence, as long as it is not phrased

19   to call attention to defendant's own failure to testify.'"  United States v. Lopez-Alvarez, 970 F.2d

20   583, 595-96 (9th Cir. 1992) (quoting United States v. Bagley, 772 F.2d 482, 494-95 (9th Cir.

21   1985); see United States v. Mayans, 17 F.3d 1174, 1185 (9th Cir. 1994) ("Thus courts have

22   maintained a distinction between comments about the lack of explanation provided by the

23   defense, and comments about the lack of explanation furnished by the defendant." ); see also

24   Lincoln v. Sunn, 807 F.2d 805, 810 (9th Cir. 1987) ("Courts have distinguished between those

25   cases in which the defendant is the sole witness who could possibly offer evidence on a particular

26   issue, and those cases in which the information is available from other defense witnesses as

well.").

The prosecutor's comments regarding the defense's failure to call petitioner's girlfriend and T-Max did not rise to Griffin error.  These comments were not phrased so as to comment on defendant's failure to testify.  These comments were addressed to the lack of explanation by the defense.  For these reasons, this claim has no merit and should be denied.

*Claim Eleven*

In claim eleven, petitioner alleges that the prosecutor committed misconduct by arguing that it did not matter who picked up and buried the shell casings:

> Then you have the added factor that the gun shells were collected apparently by Nick Costello; although he says it's Scott Appleby.  So, you know, I don't think it really matters which one of them did it; although I think it's more believable that Mr. Appleby is the one who saw Costello collect them because he seems to be a more up front guy, coming up and telling you the truth, where Costello is changing his story from being at the house at the time of the shooting to being in the garage, being anywhere other than seeing his friend do it because he doesn't want to come out and say that.
>
> But those shells that were used in the shooting were found in Nick Costello's-- friend of the defendant's--front yard.  Now, whether it's Appleby or Costello, the fact is one of those two friends of the Defendants picked up those shells and buried them.  And they did it because at the spur of the moment time, they're trying to cover up for him and do him a favor.

(RT at 188-89.)

Petitioner is suggesting that the prosecutor improperly vouched for Appleby's credibility.  Prosecutorial argument which is referred to as "vouching" comprises a type of prosecutorial misconduct which "consists of placing the prestige of the government behind a witness through [a prosecutor's] personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony."  U.S. v. Weatherspoon, 410 F.3d 1142, 1146 (9th Cir.  2005) (quoting United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993); see also, e.g., U.S. v. Young, 470 U.S. 1,11 (1985) (prosecutor engages in vouching where he or she "tell[s] the jury that the Government th[inks] ... witnesses testified truthfully").  As the Supreme Court reasoned in Young:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Young, 470 U.S. at 18-19 (holding that rebuttal argument stating that prosecutor believed defendant intended to commit charged fraud was improper expression of personal opinion); United States v. Combs, 379 F.3d 564, 574 (9th Cir. 2004) (prosecutor's argument that in order to acquit defendant jury had to believe that case agent would risk his job by lying on stand constituted impermissible vouching).

The prosecutor argued that Appleby was a more believable regarding who buried the casings because he seemed to be a more "up front guy," whereas Costello changed his story. This argument did not constitute improper witness vouching.  Based on the evidence, the prosecutor properly argued which witness was more believable.

The prosecutor's argument that it did not matter who buried the casings was also not improper.  Who buried the casings was not strongly probative of petitioner's guilt. Petitioner argues that evidence regarding who buried the casings was relevant to prove whether Costello or Appleby was an aider or abettor.  However, neither Costello or Appleby were charged with aiding or abetting.

For the reasons discussed above, claim eleven is without merit.

I.   Claims Twelve through Twenty-one:  Ineffective Assistance of Counsel

*Procedural Default*

Respondent argues that claims twelve through twenty-one are procedurally barred. Respondent argues that claims twelve through sixteen and eighteen are barred because the California Supreme Court denied the petition raising these claims by order citing In re Dixon. (Respondent's Lodged Document 13.)  Respondent argues that claims seventeen and nineteen

through twenty-one are barred because the California Supreme denied these claims by order

citing In re Robbins, 18 Cal.4th 770, 780 (1998), In re Clark, 5 Cal.4th 750 (1993), and In re

Swain, 34 Cal.2d 300, 304 (1949).  (Respondent's Lodged Document 14.)

Because these claims are without merit, the undersigned will not reach the

procedural bar issue.  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix

v. Singletary, 520 U.S. 518, 525 (1997).  Some of these claims were addressed on the merits by

the Sacramento County Superior Court.  Accordingly, the undersigned considers whether the

denial of these claims by the Superior Court was an unreasonable application of clearly

established Supreme Court authority.  As for those ineffective assistance of counsel claims which

no state court reviewed on the merits, the undersigned conducts a de novo review.  Nulph v.

Cook, 333 F.2d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.

2002).

*Legal Standard for Ineffective Assistance of Counsel Claims*

The test for demonstrating ineffective assistance of counsel is set forth in

Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

all the circumstances, counsel's performance fell below an objective standard of reasonableness.

Id. at 688.  To this end, the petitioner must identify the acts or omissions that are alleged not to

have been the result of reasonable professional judgment.  Id. at 690.  The federal court must then

determine whether in light of all the circumstances, the identified acts or omissions were outside

the wide range of professional competent assistance.  Id.  "We strongly presume that counsel's

conduct was within the wide range of reasonable assistance, and that he exercised acceptable

professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702

(9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

1   reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

2           In extraordinary cases, ineffective assistance of counsel claims are evaluated

3   based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93 (2000)

4   (citing Lockhart v. Fretwell, 506 U.S. 364 (1993)).

5           The Supreme Court has emphasized the importance of giving deference

6   to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's
> performance must be highly deferential" and that "every effort
> [must] be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time."
> 466 U.S. at 689. Thus, even when a court is presented with an
> ineffective-assistance claim not subject to § 2254(d)(1) deference,
> a [petitioner] must overcome the "presumption that, under the
> circumstances, the challenged action 'might be considered sound
> trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91,
> 101 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show
> that he would have satisfied Strickland's test if his claim were
> being analyzed in the first instance, because under § 2254(d)(1), it
> is not enough to convince a federal habeas court that, in its
> independent judgment, the state-court decision applied Strickland
> incorrectly. See Williams, supra, at 411.[4] Rather, he must show
> that the [ ]Court of Appeals applied Strickland to the facts of his
> case in an objectively unreasonable manner.

18   Bell v. Cone, 535 U.S. 685, 698-99 (2002).

19           *Claim Twelve*

20           In claim twelve, petitioner alleges that counsel was ineffective for failing to call

21   experts to contradict the prosecutor's theory and autopsy findings. Petitioner argues that had

22   counsel employed an expert criminalist or other expert to re-enact the incident, jurors would have

23   learned the near exact location of the shooter and weapon. Petitioner argues that this evidence

24   would have contradicted the prosecutor's theory of a walk-up close range shooting while the

---

25           [4] This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477

26   (1945).

victim was sitting in the driver's seat.  Petitioner also argues that trial counsel failed to

adequately cross-examine the defense expert, Mark Super.

> The Sacramento Superior Court rejected this claim for the reasons stated herein:

> In the first petition, Sacramento County Superior Court Case No. 06F10406, petitioner first claims that trial counsel was ineffective in Case No. 04F01798, in failing to adequately cross-examine the prosecution's expert witness, Mark Super or to employ a defense expert to contradict that witness, regarding the gunshot wound to the victim, to show that the shooting did not occur as portrayed by the prosecution as that of a close-range shooting.  He also claims ineffective assistance of appellate counsel in failing to raise the claim on appeal.

> Petitioner fails to attach any reasonably available documentary evidence, such as an affidavit, from either Mark Super or a defense expert, to show what testimony could have been but was not presented at trial that would have shown the possibility that the shooting was not at close range.  Nor does petitioner show that any such testimony would have been reasonably likely to have made a difference in the outcome of the trial, especially in light of the testimony from eyewitnesses that the shooter, who was shown to be petitioner, had come right up to the window of the car and shot the victim at close range.  As such, the claim fails and is denied (In re Bower (1985) 38 Cal.3d 865; In re Swain (1949) 34 Cal.2d 300; In re Harris (1993) 5 Cal.4th 813, 827 fn.5; Strickland v. Washington (1984) 466 U.S. 668.)

(Respondent's Lodged Document 9.)

> Petitioner has not provided any evidence that an expert would have testified that the shooting was not at close range.  As such, petitioner has failed to establish prejudice with respect to this claim.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a helpful expert could be found or would testify on petitioner's behalf insufficient to establish prejudice); Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (no ineffective assistance where petitioner did "nothing more than speculate that, if interviewed," a witness might have given helpful information).  Petitioner's own speculation that an expert would have been able to offer this testimony is insufficient to demonstrate a colorable ineffective assistance of counsel claim.

> While petitioner faults counsel for not adequately cross-examining Dr. Super, he does not identify any specific questions counsel could have asked Dr. Super that would have changed the outcome of the trial.

Finally, two witnesses testified that petitioner came right up to the window of the car and shot the victim at close range. One of these witnesses was Michelle Toney, a passenger in the car. Based on this eyewitness testimony, it is very unlikely that trial counsel could have found an expert to testify that the shooting did not occur as testified to by the eyewitnesses.

For the reasons discussed above, claim twelve is without merit. The denial of this claim by the Sacramento County Superior Court was not an unreasonable application of clearly established Supreme Court authority.

*Claim Thirteen*

In claim thirteen, petitioner alleges that counsel was ineffective for failing to investigate Appleby's psychiatric records and to impeach him with these records. Petitioner claims that he told his counsel that Appleby was legally insane.

As discussed above, on direct appeal, the California Court of Appeal found that the trial court properly denied petitioner's <u>Marsden</u> motion, one of the grounds of which was that trial counsel failed to present evidence that Appleby was insane. (Respondent's Lodged Document 2, pp. 9-11.) The California Court of Appeal found,

> Appleby's numerous prior convictions were discussed prior to trial. Defense counsel made a successful motion in limine permitting impeachment of Appleby with several of those prior convictions. Defendant's accusation that counsel was ineffective for failing to purse Appleby's alleged incarceration in a mental facility did not make a colorable claim that counsel's performance was deficient. At best, it was merely speculative information of marginal relevance and questionable admissibility.

(<u>Id</u>., p. 11.)

For the reasons stated by the California Court of Appeal, the undersigned finds that counsel's failure to attempt to impeach Appleby with evidence that he had once been incarcerated in a mental hospital was not ineffective assistance. Assuming that such evidence existed, it is not clear whether it would even have been admissible. It is not clear what type of mental illness Appleby suffered from and whether it impacted his credibility. For that reason, it is difficult to assess the issue of prejudice. However, because Appleby was impeached by his

1   numerous convictions, it is not likely that evidence that he had once been incarcerated in a

2   mental hospital would have changed the outcome of the trial.

3          In the rest of claim thirteen, petitioner alleges that trial counsel was ineffective for

4   failing to present evidence suggesting that Appleby had a motive to fabricate because he was mad

5   at petitioner.  Petitioner alleges that as a result of counsel's ineffective assistance, the jury did not

6   learn that: 1) Appleby had gotten petitioner's Chevy Suburban towed away; 2) a pistol found in

7   the Suburban would have contradicted Appleby's testimony that he never had a gun; 3) Appleby

8   had previously stated that petitioner paid him only one-third of what he owed him; 4) Appleby

9   was not interested in the Suburban but in getting his tools, all of which actually belonged to

10  petitioner.

11         In support of his claim that counsel failed to present evidence that Appleby was

12  mad at him, petitioner cites Exhibit J attached to the petition.  Exhibit J appears to be reports by

13  someone at the Sacramento County Sheriff's Office of conversations with Harry Jones.  These

14  reports state that Jones told the reporting officer that Appleby had contacted him after the

15  shooting and told him that he wanted his tools out of the Suburban, which was returned to Jones

16  after petitioner's arrest because the vehicle was still in Jones's name.  (Dkt. No. 43-3 at 77-78.)

17  Appleby told him that he was not interested in the Suburban, but he wanted his tools out of it so

18  that he could work.  (Id. at 78.)  The fact that Appleby wanted his tools back does not suggest a

19  motive to lie.  It is very unlikely that the outcome of the trial would have been different had the

20  jury been made aware that Appleby tried to get his tools back after the shooting.

21         The report also states that Jones told the Sheriff's Office that  "Appleby said he

22  wasn't going to have partners anymore if things like this were going to happen.  Appleby said

23  Dell [petitioner] only paid him one-third of what he owed him on a job anyway."  (Id.)  At trial,

24  Appleby testified that he and petitioner split everything 50-50.  (RT at 77.)  While Appleby may

25  have believed that petitioner was "shorting" him, this did not necessarily create a motive to

26  inculpate petitioner in a murder.  It is very unlikely that the jury would have decided to disbelieve

1 Appleby's testimony had they known that he believed that petitioner was not paying him all he
2 was due.

3          Finally, Appleby also told Jones that the police found a pistol and drug
4 paraphernalia in petitioner's car.  (Id. at 79.)   Petitioner apparently infers from this statement that
5 the gun must have been Appleby's because Appleby was living in the car.   However, other than
6 Appleby's statement there is no evidence that a pistol was found in the Suburban after the
7 incident.

8          Much of Appleby's testimony was corroborated by other witnesses.   While
9 Costello was clearly reluctant to testify against petitioner, he did not deny that petitioner was on
10 Odea Drive just before the shooing.  (RT at 140.)   It is highly unlikely that the outcome of the
11 trial would have been different had trial counsel sought to impeach Appleby's testimony with the
12 evidence described above.

13          *Claim Fourteen*

14          In claim fourteen, petitioner alleges that counsel was ineffective for failing to call
15 Anthony Woods, aka T-Mack as a witness.   Petitioner alleges that trial counsel could have
16 located Woods because he knew his license plate number.   Petitioner contends that Woods would
17 have testified that he saw Appleby pick up the shell casings.   Petitioner also argues that Woods
18 would have testified that he did not leave the scene with petitioner, as testified to by Appleby.

19          In support of claim fourteen, petitioner refers to Exhibit I attached to the petition
20 which includes letters from Woods to his appellate counsel.   In these letters, Woods states that
21 Appleby is the one who picked up the shell casings.  (Dkt. No. 43-2, p. 64.)   He also states that
22 "Mr. Smith was not around at the time."  (Id., p. 62.)   He also states that he, Woods, was not in
23 the car with petitioner.  (Id., p. 63.)   He also suggests that Appleby was mad at petitioner:
24 "Something happen to where Free found out about Scott ride me and mine old lady around when
25 they was done working so Free didn't give Scott the key.  So I guess Scott was mad at Free."  (Id.
26 at 65.)

1              The Sacramento County Superior Court[5] denied this claim for the reasons stated

2  herein:

3              Petitioner does not demonstrate that trial counsel's choice was not a tactical one,
as Woods could have invoked his Fifth Amendment rights and declined to testify,
4              or might well have testified to the detriment of petitioner due to Woods's own
involvement in the matter.  Nor does petitioner demonstrate where Woods was
5              located at the time of the trial and that trial counsel would have been able to
discover Wood's location so as to be able to subpoena him to testify at trial.
6              Regardless, even if Woods had been found and had testified that it was actually
Appelby who had picked up the bullets, petitioner does not show that this would
7              have been reasonably likely to have made any difference in the outcome of the
trial.  Woods appears to have been incarcerated at the time he wrote the letters,
8              and reflects that in the letters, which lacked credibility.  Further, Appelby's own
statements about who picked up the casings were already shown to the jury to
9              have been contradictory, and Woods would not have added much more to the
impeachment of that part of Appelby's statements.  Nor would it have made a
10             difference in the strong evidence that petitioner had been the shooter and had shot
the victim at close range.  As such, the claim fails (Strickland, supra).

11

12  (Respondent's Lodged Document 9.)

13              The denial of this claim by the Superior Court was not an unreasonable

14  application of clearly established Supreme Court authority.  Petitioner claims that trial counsel

15  could have located Woods because he knew his license plate number.  However, petitioner has

16  presented no evidence that Woods could actually be located through his license plate number

17  alone.  In addition, in his letters Woods admitted his reluctance to speak on petitioner's behalf ("I

18  know I been acting like I didn't want to say nothing..." (Dkt. No. 43-2 at at 62 of 117.)).  This

19  suggests that Woods may not have been willing to testify at petitioner's trial.

20              In any event, for the reasons stated by the Superior Court, petitioner has not

21  demonstrated that he was prejudiced by trial counsel's failure to call Woods as a witness.  Had

22  Woods testified that Appleby picked up the shell casings and buried them, it is not likely that the

23  outcome of the trial would have been different.  In addition, Woods's statement in his letter

24  _____

25       [5] The second page of the opinion of the Superior Court, containing a portion of the
description of this claim, is missing.  Respondent did not receive this page from the Superior
26  Court. (Dkt. No. 44, p. 13 of 72, n.2.)   However, page three of the opinion, which contains the
Superior Court's reasoning, is in the court record.  (Respondent's Lodged Document 9.)

1  regarding why Appleby was mad at petitioner is very unclear and does not demonstrate a clear

2  motive by Appleby to lie.  In addition, Woods's statements suggest that he was present at the

3  time of the shooting, which is consistent with Appleby's testimony.  Woods did not deny that

4  petitioner was the shooter.   For these reasons, and because of the strong evidence that petitioner

5  was the shooter, it is not likely that the outcome of the trial would have been different had trial

6  counsel called Woods to testify.

7          For the reasons discussed above, claim fourteen should be denied.

8          *Claim Fifteen*

9          In claim fifteen, petitioner alleges that trial counsel was ineffective for failing to

10  call petitioner's girlfriend to testify in support of his alibi defense.  As discussed above,

11  petitioner's counsel addressed his investigation of petitioner's girlfriend and the alibi defense at

12  the Marsden hearing:

13          Yes, Your Honor, and I have contacted what would have been a critical witness in
           this case, but that person totally destroyed any possible defenses that we may have
14          had by utilizing that person.  And he insisted that we--and when I say "we," I
           mean myself and my investigator--that we speak to that person, and we did.  We
15          spoke to that person at least three times that I'm aware of.  And every time we
           spoke to that person, that person would not assist us in any manner that would, in
16          fact, hurt our case even more.  So besides that, that person we really had--have no
           other witnesses.

17

18  (Respondent's Lodged Document 16, volume II, p. 7.)

19          In support of the instant claim, petitioner has presented no evidence that his

20  girlfriend was willing to testify that petitioner was with her at the time of the shooting.  Petitioner

21  has presented no evidence contradicting trial counsel's representation that his girlfriend

22  apparently was unwilling to provide an alibi and would have actually "destroyed any possible

23  defenses."  For these reasons, petitioner has failed to demonstrate that counsel acted

24  unreasonably in not calling his girlfriend as a witness or that he was prejudiced by his failure to

25  do so.  This claim should be denied.

26  ////

43

*Claim Sixteen*

In claim sixteen, petitioner alleges that his counsel was ineffective for failing to call Harry and Judith Jones as defense witnesses.  The Sacramento County Superior Court denied this claim for the reasons stated herein:

> Petitioner next claims that trial counsel was ineffective in failing to call Harry and Judith Jones as witnesses for the defense at trial.  He attaches Exhibit G in support, which are police reports summarizing Harry Jones's statements to police.  In the statements, Harry told police that Appelby had called him and made numerous statements about the crime and Appleby seeing petitioner shoot the victim.  Harry also stated that petitioner had bought the Suburban vehicle from Harry and had been making payments to Harry on it, that Harry received a call from a tow company that the Suburban had been towed and that it would take $400 from Harry, still the registered owner of it, to get it back, and that Harry got it back and it had no guns, ammunition, or drugs in it.  Petitioner claims that this would contradict Appelby's testimony that Appelby bought the suburban.  Harry Jones's statement to police contain[s] nothing favorable to petitioner.  Harry had no personal knowledge as to what petitioner did with the Suburban, once it was out of Harry's physical possession, nor did Harry have any personal knowledge as to what was in the Suburban at the time it was towed.  Petitioner fails to show anything specific that Harry Jones, or Judith Jones, would have testified to that would have been reasonably likely to have made any difference in the outcome of the trial, requiring denial of this claim (Strickland, supra.)

(Respondent's Lodged Document 9.)

After reviewing Jones's statement to the police (see Dkt. No. 43-2, exhibit J), the undersigned agrees with the reasoning of the Superior Court.  Jones's statements to the police were not favorable to petitioner.  According to Jones, Appleby told him that petitioner shot the victim in the car.  (Dkt. No. 43-2,  p. 78 of 117.)  Jones had no personal knowledge of the crime.  Petitioner has not demonstrated that the testimony of either Harry or Judith Jones would have changed the outcome of the trial.

The denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

*Claim Seventeen*

In claim seventeen, petitioner alleges that counsel was ineffective for failing to

object to the jury being instructed as to the heat of passion theory of voluntary manslaughter but not the imperfect self-defense theory of voluntary manslaughter.  Petitioner argues that trial counsel should have argued for a defense of imperfect self-defense.

Petitioner's trial counsel argued for both instructions:

Court: Okay.  Under which theory of voluntary manslaughter are you requesting such?

Counsel: Well, basically Judge, I think that on two theories.  Basically, I think that given the circumstances of what may have transpired there out on Odea Street on the date in question, given the fact that my client had been angry about what had occurred supposedly to his automobile, um, and being told that one of the persons who may have been involved in the theft of his car that was present at the moment may have caused my client to suddenly develop a heat of passion in the moment and acted in the manner in which he did.

In addition, of course, I think that there is a possibility, given the facts of the case, that my client also may have acted in the--maybe unreasonable belief in the necessity to defend himself as the automobile of the victim came at him and swerved just before my client allegedly shot into the car as it passed.  So--and maybe the second theory is the most logical one for which to give that voluntary manslaughter instruction.

(RT at 177-78.)

The trial court agreed to give the heat of passion instruction but agreed with the prosecutor that there was no evidence to support an instruction for imperfect self-defense.  (RT at 178-179.)

Under California law, even if a homicide defendant was unreasonable in fearing that the victim was going to inflict death or great bodily harm upon the defendant, the defendant is entitled to have the jury instructed on imperfect self-defense if there is substantial evidence the defendant acted in an honest but unreasonable fear that the victim was about to inflict death or great bodily injury on the defendant.  See 1 Witkin & Epstein, Cal.Criminal Law, supra, § 77, pp. 411-12.  Such a defense, if established, reduces murder to voluntary manslaughter by negating malice aforethought.  People v. Flannel, 25 Cal.3d 668, 674 (1979).

"The subjective elements of self-defense and imperfect self-defense are identical. Under each theory, the appellant must actually believe in the need to defend himself against

imminent peril to life or great bodily injury. To require instruction on either theory, there must be evidence from which the jury could find that appellant actually had such a belief." People v. Viramontes, 93 Cal.App.4th 1256, 1262 (2001).

In the instant case, there was no evidence presented that petitioner felt the need to defend himself against the victim.  For that reason, counsel was not unreasonable in failing to press harder for the imperfect self-defense instruction.

Petitioner also suggests that counsel did not adequately argue the heat of passion defense during closing argument.  Regarding heat of passion, the jury was instructed in part, "The heat of passion which will reduce a homicide to manslaughter must be such a passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same circumstances...." (CT at 173.)  In his closing argument, trial counsel did not emphasize the heat of passion defense most likely because there was no evidence to support it.  Counsel could not reasonably argue that a reasonable person, seeing their stolen car, would walk up and shoot the driver multiple times.  Instead, counsel argued that Appleby could not be believed and that he was motivated to lie because he wanted to take over the car repair business from petitioner.  (RT at 196-209.)  Unfortunately for petitioner, there was no good defense to the charges.

Counsel argued the case as well as he could in light of the overwhelming evidence against petitioner.  The instant claim of ineffective assistance of counsel is without merit and should be denied.

*Claim Eighteen*

In claim eighteen, petitioner alleges that trial counsel was ineffective for failing to present the defense that Appleby was an accessory.

The undersigned agrees with respondent that there was no evidence that Appleby was an accessory.  That he may have picked up the bullet casings did not make him an aider and abettor.  Moreover, whether Appleby was an aider and abettor was not relevant to whether petitioner committed the crime.  A finding that Appleby aided and abetted petitioner was not a

1   defense.  Perhaps most important, an argument by counsel that Appleby aided and abetted

2   petitioner would have undermined the defense that petitioner did not commit the crime.  For

3   these reasons, counsel acted reasonably in *not* arguing that Appleby acted as an accessory.  This

4   claim should be denied.

5         *Claim Nineteen*

6         In claim nineteen, petitioner alleges that trial counsel was ineffective for failing to

7   present a viable defense.  In support of this claim, petitioner argues that trial counsel was

8   ineffective for failing to make an opening statement.  Petitioner also argues that counsel's cross-

9   examination of the prosecution's witnesses was minimal.  Petitioner also faults counsel for

10   presenting no defense witnesses including expert witnesses.  Petitioner argues that counsel failed

11   to adequately present the "third party" defense he requested and failed to investigate Appleby's

12   mental problems.

13         The decision whether to make an opening statement is typically a strategic

14   decision that cannot form the basis of an ineffective assistance claim.  <u>United States v.</u>

15   <u>Rodriguez-Ramirez</u>, 777 F.2d 454, 458 (9th Cir. 1985) ("The timing of an opening statement,

16   and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in

17   such cases will not constitute the incompetence basis for a claim of ineffective assistance of

18   counsel.").  In any event, it is very unlikely that the outcome of the trial would have been

19   different had counsel made an opening statement.

20         The undersigned has reviewed the record and finds that petitioner's counsel

21   adequately cross-examined the prosecution's witnesses.  Counsel's failure to present petitioner's

22   third party, i.e. alibi defense, has been previously discussed.  As noted above, there was no third

23   party to blame.  Moreover, petitioner's girlfriend apparently would not testify that petitioner was

24   with her at the time of the shooting.  Regarding counsel's failure to call any defense witnesses, as

25   previously discussed, counsel strategically chose not to call any witnesses because all of them

26   either hurt petitioner's defense or would not testify.  Petitioner's claims that counsel was

ineffective for failing to call expert witnesses and to investigate and present evidence of Appleby's mental health problems were addressed and rejected in a previous section of these findings and recommendations.

For these reasons, the instant claim of ineffective assistance of counsel is without merit.  Accordingly, this claim should be denied.

*Claim Twenty*

In claim twenty, petitioner alleges that trial counsel was ineffective during sentencing.  In particular, petitioner argues that counsel failed to present any character witnesses or any other mitigating evidence.  Petitioner argues that Harry and Judith Jones could have testified as to his good character.  Petitioner also argues that at the time of the present offense, he had been "felony free" since 1993.  Petitioner also argues that he had had many jobs, started his own business and paid child support.

The probation report indicated that petitioner had numerous prior convictions.  In 1992, petitioner was convicted of misdemeanor battery and resisting arrest.  (CT at 211-12.)  In 1993, petitioner was convicted of misdemeanor driving under the influence and carrying a loaded firearm.  (CT 212.)  In 1993, petitioner was convicted of felony battery on a custodial officer and robbery.  (Id.)  In 1998, petitioner was convicted of misdemeanor battery on a spouse.  (Id.)  In 2000, petitioner was convicted of misdemeanor battery.  (CT at 213.)

At sentencing, the trial court commented, "Well, this Court has no doubt whatsoever that Mr. Free Odell Smith is the person that committed what has been the most senseless murder I have ever sat as a judge in.  Absolutely no reason for this to have happened to Mr. Navarro."  (RT at 232.)  The court went on to sentence petitioner to 15 years to life for second degree murder and a consecutive 25 years to life pursuant to California Penal Code § 12022.53(d).

Based on the record described above, it is very unlikely that petitioner would have received a different sentence had trial counsel presented any of the mitigating evidence petitioner

48

1   cites in his petition.  Moreover, it is unclear what other sentence to which petitioner believes he

2   would be entitled had counsel introduced the mitigating evidence.  The trial court was required

3   by law to sentence him to 25 years to life pursuant to California Penal Code § 12022.  The

4   sentence for second degree murder is 15 years to life.  Cal. Penal Code §§ 187, 190.  Petitioner

5   clearly did not qualify for probation.

6              For the reasons discussed above, the instant claim of ineffective assistance of

7   counsel is without merit and should be denied.

8              *Claim Twenty-One*

9              In claim twenty-one, petitioner alleges that trial counsel was ineffective for

10  denying him his right to be present at all critical stages of the trial.  In particular, petitioner

11  argues that trial counsel waived petitioner's presence for an in-camera hearing regarding

12  prosecution witness Costello.  At this hearing, a lawyer was appointed to advise Costello

13  regarding his testimony:

14              Court: One final matter, Mr. Mayorga.  I understand you don't object to the Court
            placing on the record that Mr. Leonard has been appointed to advise witness Nick
15          Costello in this matter.  Mr. Leonard is in the courtroom.  I'm going to ask that he
            remain during the course of Mr. Costello's testimony.
16
            Petitioner's Counsel: I have no objections, Your Honor.  I waive my client's
17          presence–

18              Court: Okay.  Thank you.

19              Petitioner's Counsel: –for that purpose.

20  (RT at 130.)

21              Petitioner is arguing that his counsel should not have waived his presence at the

22  hearing where the issue of counsel for witness Costello was discussed.  Petitioner also argues that

23  counsel was ineffective for not objecting to appointment of counsel for Costello and for

24  counsel's presence during Costello's testimony.

25              Clearly established United States Supreme Court precedent provides that a

26  defendant has the right to be present at any critical stage of a criminal proceeding if his presence

would contribute to the fairness of the procedure.  <u>Campbell v. Rice</u>, 408 F.3d 1166, 1171 (9th Cir. 2005) (citing <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987)).  However, the privilege of presence is not required when the "presence would be useless, or the benefit but a shadow." <u>Stincer</u>, 482 U.S. at 745.  A defendant's right to be present is not absolute, but instead only required to the extent that fairness and justice would be thwarted by his absence.  <u>United States v. Gagnon</u>, 470 U.S. 522, 526 (1985).

As observed by respondent, counsel for Costello was appointed in order to protect Costello's right against self-incrimination.  An objection by counsel to appointment of counsel for Costello or for permitting counsel to remain in the courtroom during Costello's testimony would have been overruled.   For these reasons, counsel was not ineffective for failing to object.

Regarding counsel's waiver of petitioner's right to be at the hearing, there was no reason for petitioner to be present for this mundane formality.  Petitioner's presence would have been useless.  For these reasons, counsel was not ineffective for waiving petitioner's presence at this hearing.

For the reasons discussed above, the instant ineffective assistance of counsel claim is without merit and should be denied.

J.  <u>Claims Twenty-Two, Twenty-Three, Twenty-Four:  Ineffective Assistance of Appellate Counsel</u>

*Claim Twenty-Two*

In claim twenty-two, petitioner alleges that appellate counsel was ineffective for failing to raise claims four through twenty-one on appeal.  Respondent does not argue that this claim is procedurally barred.  Accordingly, the undersigned considers whether the denial of this claim by the California Supreme Court was an unreasonable application of clearly established Supreme Court authority.

A claim of ineffective assistance of appellate counsel utilizes the same <u>Strickland</u> standard that is applied to trial counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 287 (2000).  Appellate

1   counsel is not required to raise every colorable or non-frivolous claim; effective appellate

2   advocacy involves weeding out weaker claims in order to focus on stronger ones.  Jones v.

3   Barnes, 463 U.S. 745, 751-54 (1983); Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989).

4           As discussed above, claims four through twenty-one are without merit.  For that

5   reason, these claims would have been denied had appellate counsel raised them on appeal.

6   Because petitioner has not demonstrated prejudice as a result of appellate counsel's failure to

7   raise claims four through twenty-one on appeal, this claim is without merit and should be denied.

8   The denial of this claim by the California Supreme Court was not an unreasonable application of

9   clearly established Supreme Court authority.

10                      *Claim Twenty-Three*

11          In claim twenty-three, petitioner alleges that appellate counsel was ineffective for

12   misstating the facts in petitioner's opening brief.  Respondent does not argue that this claim is

13   procedurally barred.  Accordingly, the undersigned considers whether the denial of this claim by

14   the California Supreme Court was an unreasonable application of clearly established Supreme

15   Court authority.

16          Petitioner argues that appellate counsel's statement in the opening brief that

17   Costello had stored an SKS rifle previously for a few days at petitioner's request was prejudicial.

18   Petitioner argues that such a statement does not exist in the record.  In the statement of facts of

19   opening brief, appellate counsel stated,

20              A few minutes later, Costello and appellant came running back.  Whether T-Mack
                was with them was not stated.  Costello went to his house, and appellant went to
21              his El Camino.  Appellant lifted up a pad in the back of the truck and removed a
                wrapped item.  He unwrapped it and stood there.  *Costello saw that it was the SKS*
22              *rifle that he previously had stored for a few days at appellant's request.*  Appleby
                did not know whether appellant regularly stored the rifle in the vehicle.  (RT 62-
23              64.)

24   (Respondent's Lodged Document 1, p. 6.)  (emphasis added.)

25          Appellate counsel mistakenly stated that Costello had previously stored the rifle,

26   because it was Appleby who testified that he previously had the rifle.  The portion of the

transcript cited by appellate counsel above was from Appleby's testimony.  The undersigned

agrees with respondent that this error was easily decipherable.  In addition, it is not likely that

this error contributed to the California Court of Appeal's affirmance of the judgment.  The

California Court of Appeal did not rely on this error in its opinion.

Petitioner also objects to appellate counsel's argument that the trial court's

characterization of the relationship between petitioner and his counsel as being a personality

conflict was not on the record.  Petitioner argues that this statement gave the wrong impression

that it was appellate counsel's characterization of the relationship rather than the trial court's

characterization.

In the opening brief, appellate counsel argued that the trial court's finding that

petitioner and his counsel had a mere personality conflict was not supported by the record:

> ...This remark, in and of itself, signalled the existence of such breakdown in the attorney-client relationship that it should have generated an inquiry by the trial court as to whether defense counsel's ability and obligation to represent appellant was compromised.  (People v. Bonin (1989) 47 Cal.3d 808, 836; cf. People v. Horton 91995) 11 Cal.4th 1068, 1106.)  Instead, the trial court merely concluded that the discord was a "personality conflict" and "expected" defense counsel would continue to properly represent appellant in the case.  (RT 16.)
>
> The trial court's characterization of the relationship as a "personality conflict" is not borne out by the record.  There is every indication that appellant made every effort to communicate with his attorney.  He initially accepted the attorney's advice and representations and initially relied upon him to represent his interests.  (RT 13, 15.)  As appellant indicated, he placed his trust in his attorney.  (RT 13, 15.)  Over time, this trust and confidence was eroded by defense counsel's failure to respond to appellant and failure to provide him with meaningful explanations and approaches to the case.  In short, the relationship deteriorated to a point beyond repair...

(Respondent's Lodged Document 1, pp. 17-18.)

Appellate counsel argued that the record showed that the conflict between

petitioner and his counsel involved more than a mere personality conflict and that the trial court

erred in characterizing it as so.  This argument does not constitute ineffective assistance of

counsel.

The denial of the claims raised in claim twenty-three by the California Supreme

1   Court was not an unreasonable application of clearly established Supreme Court authority.

2   Accordingly, this claim should be denied.

3             *Claim Twenty-Four*

4             In claim twenty-four, petitioner argues that appellate counsel failed to notify

5   petitioner of his rehearing date after the California Court of Appeal issued its opinion.  Petitioner

6   argues that he could not file his petition for rehearing because he did not receive adequate notice.

7             Respondent argues that this claim is barred because the Sacramento Superior

8   Court denied this claim by order citing In re Robbins, 18 Cal.4th 770, 780 (1998), and In re

9   Clark, 5 Cal.4th 750 (1993).  (Respondent's Lodged Document 9.)

10             Because this claim is without merit, the undersigned will not reach the procedural

11   bar issue.  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v.

12   Singletary, 520 U.S. 518, 525 (1997).  The Superior Court went on to address the merits of this

13   claim.  (Respondent's Lodged Document 9.)  Accordingly, the undersigned considers whether the

14   denial of this claim by the Superior Court was an unreasonable application of clearly established

15   Supreme Court authority.

16             The Superior Court denied this claim for the reasons stated herein:

17         Regardless, petitioner attaches correspondence from appellate counsel dated May
      17, 2006, which was five days after the Third District had issued its opinion

18         affirming the judgment, advising petitioner of the requirement that the petition for
      rehearing be filed by May 27, 2006; further, petitioner admits receiving this letter

19         from appellate counsel on May 23, 2006, nine days after the Third District had
      issued its opinion affirming the judgment and four days before the deadline.  As

20         such, petitioner still had time to timely deliver to prison authorities a petition for
      hearing to be mailed to the Third District, which would have met the requirement

21         for a timely filing of such a petition with that rule (see In re Jordan (1992) 4
      Cal.4th 116 (prison delivery rule)).  Nor does petitioner specify what issue he was

22         prevented from raising in his petition for review filed thereafter with the
      California Supreme Court, due to his failure to timely file a petition for rehearing.

23         As such, the claim would fail in any event, even if it were not barred by
      Robbins/Clark (Bower, supra; Swain, supra).

24

25   (Respondent's Lodged Document 9.)

26             In the amended petition, petitioner argues that in the petition for review he would

have raised appellate counsel's misstatement of the facts including the issues discussed in claim twenty-three above.  For the reasons discussed above, the undersigned finds that had these matters been brought to the appellate court's attention in a petition for review, it is very unlikely that the petition for review would have been granted.

Petitioner also argues that he would have "beefed up" trial counsel's ineffectiveness, apparently in support of his claim that the trial court improperly denied his motion for substitute counsel.  However, petitioner does not describe with any specificity how he would have "beefed up" this claim.

Petitioner also claims that he had newly discovered evidence, i.e. the discovery of Anthony Woods, whose statements he would have put in a petition for review.  This claim could not have been raised on appeal because it involved consideration of matters outside the record on appeal.  In re Carpenter, 9 Cal.4th 634, 646 (1995).  Therefore, it would have been inappropriate for petitioner to have raised this claim in the petition for review.

The denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

Conclusion

For all of the above reasons, the undersigned recommends that petitioner's application for a writ of habeas corpus be denied.  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 3, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

sm1462.157